## John L. Cox *vs.* Fred Savage.

Suffolk.    March 8, 1911. — June 20, 1911.*

Present: Knowlton, C. J., Morton, Hammond, Loring, Braley,
Sheldon, & Rugg, JJ.

*Practice, Civil,* Agreement as to facts, Ordering verdict.    *Evidence,* Presumptions and
burden of proof.

At the trial of an action by the assignee of a corporation, engaged in the sale and
lease of milking machines and the sale of dairy supplies, against one who had
been its " division manager " for a certain territory, to recover upon an account
annexed for certain supplies alleged to have been furnished to the defendant by
the corporation, the plaintiff introduced in evidence an agreement, signed by
the attorneys for the parties to the action, providing that the items and credits
stated in the account annexed were substantially correct so far as they went;
" that the defendant had some agency relations with the corporation previous to
April 9 of a certain year; that thereafter up to some time in the following July
they had business dealings and relations, agency or otherwise, when their deal-
ings and relations ceased "; that " during the period of his said agency rela-
tions with the " corporation " the defendant received certain milking machinery
supplies from the company, and was charged therefor by the company in his
accounts with them; that some of the supplies were in his possession at the
time of the termination of his relations with the company.   The defendant
claims and the plaintiff denies that the defendant should be credited for such
supplies as were in his possession at the time of the termination of such rela-
tions, the defendant contending and the plaintiff denying that the relations and
agreements of the defendant with such company were such that said credit
should be given.   It therefore is agreed that the only question to be tried before
the jury shall be whether or not the defendant shall have any credit for such·
goods as were in his possession at the termination of his relations with said
company; and that if the jury answer that the relations between the defendant
and said company were such that said defendant should not have such credit,
then the jury may find for the plaintiff in " a certain sum; " but that if the
relations between the defendant and the " corporation " were such as to entitle
him to credit for such supplies which he had on hand at the termination of his
relations with said company, then the court may refer the case to an·assessor
who shall determine the amount of credit to which the defendant is entitled
because of such supplies."   *Held,* that the foregoing did not amount to an
agreement to shift the burden of proof from the plaintiff as to his general right
to recover and to impose it upon the defendant to establish as an independent
defense his right to return the supplies on hand and to receive credit for them.
At the trial of an action by the assignee of a corporation, engaged in the sale and
lease of milking machines and the sale of dairy supplies, against one who had

* The opinion in this case was withdrawn on an application for a rehear-
ing.   This was denied on September 5, 1911, when the opinion was returned
to the Reporter.

been its " division manager " for a certain territory, to recover upon an account annexed for certain supplies alleged to have been furnished to the defendant by the corporation, it appeared that the items in the account annexed were correctly stated. The defendant introduced evidence tending to show that he was elected " division manager " by the directors of the corporation in November of a certain year, at a meeting when a majority of the directors were present, and that it also then was voted that his " commission " be twenty per cent " of installation fees and rentals of " milking machines " installed in his territory," that the corporation had its depot of supplies in Holyoke, that immediately after the directors' meeting the defendant had a talk with them and asked that they send him supplies at his place of business, to which the president replied that they did not have money enough to run two stations of supplies and that if he had them he would have to advance money toward them; that thereafter and until the time of the severance of his relations with the corporation two years later the defendant acted for the corporation in the selling and leasing of milking machines and kept supplies at his place of business, both supplies and machines being shipped to him on his order and invoiced to him at a gross price less his commission; that the defendant made collections and remitted to the corporation, but at no stated times; that in April of the second year of his service as " division manager," the directors of the corporation discontinued that office and notified him thereof; that during April a statement was made by the defendant and his agent of all transactions between the corporation and himself to that date, and the amount shown thereby to be due to the corporation from him was paid by him, the amount being accepted by the corporation in full satisfaction of all items previous to the time when the defendant ceased to be division manager with exceptions not material; that thereafter the corporation made to the defendant a proposition that he deal with it as a " dealer " subject to certain conditions, and that milkers and supplies be furnished to him at certain stated " discounts " from the list prices, and until the following July efforts were made to reach a mutual working basis, which proved futile. It was agreed that previous to the discontinuance of the office of " division manager," the defendant had had some agency relation with the corporation. All of the items in the account annexed which were material were for transactions which occurred after the defendant ceased to be " division manager." In letters to the defendant in May, the general manager of the corporation used the term "agent" as to the defendant. At the termination of his relations with the corporation in July, the defendant had on hand certain supplies and contended that he then had a right to return the supplies and have credit for them. The corporation refused to receive the supplies, and the defendant contended that he was entitled to credit for them in the action by the assignee. The parties agreed that, if the defendant's contentions were not sustained, judgment should be entered for the plaintiff on the account annexed, and that if his contentions were sustained the case should be referred to an assessor to determine the amount of the credit to which he was entitled. The presiding judge ordered a verdict for the plaintiff. *Held*, that the verdict was ordered improperly, since there was evidence for the consideration of the jury in support of the defendant's contention.

CONTRACT upon an account annexed. The declaration alleged that the claim which was the basis of the action formerly had belonged to the New England Dairy Supply Company and

that the plaintiff had acquired it by assignment. The account annexed contained four items of transactions previous to April 18, 1908, and twenty-seven items of transactions after that date, the last of which was dated June 16, 1908. Writ dated September 13, 1909.

In the Superior Court the case was tried before *Hardy*, J. The plaintiff offered in evidence a paper entitled " Agreed Statement as to Facts," signed by the attorneys for the parties in their behalf, by the first paragraph of which it was agreed in substance that the plaintiff had a right of action against the defendant for any amount that was due to the New England Dairy Supply Company at the date of the assignment. By the second paragraph it was agreed that " the items and credits stated in the account annexed to the plaintiff's declaration and bill of particulars are correct so far as they go," with certain exceptions not material. The remaining paragraphs of the agreement were as follows:

" That the defendant had some agency relations with the New England Dairy Supply Company prior to April 9, 1908. That thereafter up to some time in July, 1908, they had business dealings and relations, agency or otherwise, when their dealings and relations ceased.

" That during the period of his said agency relations with the New England Dairy Supply Company the defendant received certain milking machinery supplies from the said company, and was charged therefor by the company in his accounts with them ; that some of the said supplies were in his possession at the time of the termination of his relations with the company. The defendant claims and the plaintiff denies that the defendant should be credited for such supplies as were in his possession at the time of the termination of such relations, the defendant contending and the plaintiff denying that the relations and agreements of the defendant with such company were such that said credit should be given.

" It therefore is agreed that the only question to be tried before the jury shall be whether or not the defendant shall have any credit for such goods as were in his possession at the termination of his relations with said company ; and that if the jury answer that the relations between the defendant and said com-

pany were such that said defendant should not have such credit, then the jury may find for the plaintiff in the sum of $282.70 with interest from the date of the writ; but that if the relations between the defendant and the New England Dairy Supply Company were such as to entitle him to credit for such supplies which he had on hand at the termination of his relations with said company, then the court may refer the case to an assessor who shall determine the amount of credit to which the defendant is entitled because of such supplies."

After introducing the agreed statement as to facts in evidence, the plaintiff rested.

The defendant introduced the record of a directors' meeting of the New England Dairy Supply Company held on November 1, 1906, when a quorum of the board were present and the following votes were passed:

"By vote of directors Mr. Fred Savage of Windsor, Vt., was elected Div. Manager to care for New Hampshire and Vermont.

"By vote of directors the commission of the Div. Manager be 20% of installation fees and rentals of B. L. K. milking machines installed in his territory."

The defendant testified that directly after this meeting the defendant had a talk with the president of the corporation and the other directors who had been present at the meeting and during the talk asked the president to give him some supplies in Vermont. "They said they didn't have money enough to run two stations of supplies, and if I had the supplies I would have to advance money towards the supplies."

On April 2, 1908, by vote of the board of directors of the corporation, the office of manager for Vermont and New Hampshire was discontinued and the defendant was notified thereof. Later in April the then general manager of the company interviewed the defendant and his bookkeeper, and the defendant's bookkeeper, acting by the defendant's authority, made up a statement of all debit and credit items between the defendant and the corporation down to that date. The balance shown by that statement was paid to the corporation by the defendant in May and was accepted by the corporation in satisfaction of all items previous to that date except those shown in the account annexed, which are not material.

Immediately following that interview, the general manager of the corporation wrote to the defendant a letter stating, among other things, the following: " Instead of acting as manager of the New England Dairy Supply Company in Vermont and New Hampshire as heretofore, your relationship will be that of a dealer operating throughout these two States mentioned, with " certain territory excepted. " It is understood that you alone shall solicit sales in the territory referred to above and through advertising and other ways the " corporation " will aid you as much as possible to do so, but it is further understood that this company shall be free to make installations in your territory in special cases, of which you will be advised as such cases arise." " It is further understood that you will maintain the prices as noted," and the prices were stated. " It is understood that " the corporation " is at liberty to change these prices as they see fit, giving you proper notice. You will receive from the above prices discounts as follows:" Here followed stated discounts. " You will be billed for all material purchased by you from us as shipments are made. A statement will be sent to you at the first of every month of your account with us, and it is understood that you will make settlement by the tenth of the month."

On May 15, 1908, the general manager of the corporation, in a letter to the defendant explaining an item in an account rendered to him, wrote, " I wish to say the goods shipped covered renewals, thus the discount to you of 10% "; and in another letter of the same date he wrote, as to an inquiry made by a possible customer regarding the cow milker, " I would suggest that it might be in order to write to them again, telling them that you are agent for the milker in that territory." In response to a request by the defendant for letterheads of the company, the general manager wrote to the defendant on May 19, 1908, " When you were acting as manager of New Hampshire and Vermont for this company, it was proper that you should carry on your correspondence on the letterheads of the company, but acting in your present capacity as an agent of the company, I would prefer you not to use our letterheads."

There was no evidence of any reply to the letter of the general manager of April 18, 1908, until July 17, 1908, when the defend-

ant wrote to the corporation stating that he had "already bought and paid for the exclusive rights to handle your milking machine in Vermont and New Hampshire." This contention of the defendant was not relied on further, and negotiations between the parties thereafter ceased. There was no evidence that previous to the time when negotiations ceased the defendant had set forth the contention which he relied on at the trial.

At the close of the evidence the presiding judge ordered the jury to answer in the negative the question, whether the defendant was entitled to credit for the supplies which he had on hand, and then ordered a verdict for the plaintiff in accordance with the agreement as to facts. The defendant alleged exceptions.

Other facts are stated in the opinion.

The case was argued at the bar in March, 1911, before *Knowlton*, C. J., *Hammond*, *Braley*, *Sheldon*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*W. Keyes*, for the defendant.

*E. V. Grabill*, for the plaintiff.

RUGG, J.    This is an action of contract upon an account annexed. The defendant was in November, 1906, appointed division manager of a corporation (of which the plaintiff is assignee) for Vermont and New Hampshire. The business of the corporation was dealing in milking machines and dairy supplies. At this time the defendant had a talk with the president and directors of the corporation, in which, to quote the defendant's testimony, " They said they didn't have money enough to run two stations of supplies, and if I had the supplies I would have to advance money toward the supplies." The company's depot of supplies was then in Holyoke. The defendant acted for the corporation from this time until July, 1908, at first leasing and afterwards selling machines, and he kept certain supplies at his place in Vermont for local needs. Both machines and supplies were shipped to the defendant on his order, and invoiced to him at a gross price less his commission. It is not contended that the machines were sold to him, but it is contended that the supplies were sold to him. The defendant made collections and remitted, but at no stated times. A change in management of the corporation occurred in March, 1908, and negotiations followed for

the establishment of a new business arrangement between it and the defendant. These came to naught, and the relations ceased in July, 1908. At this time the defendant had in his possession certain supplies, which he claimed the right to return and receive credit for under the terms of his original contract with the corporation.

The case was tried upon oral evidence, and an " Agreed Statement as to Facts." A question arises as to its construction. Among its terms were these: that " the items and credits stated in the account annexed to the plaintiff's declaration . . . are correct so far as they go," with exceptions not here material. " That during the period of his said agency relations with the New England Dairy Supply Company the defendant received certain milking machinery supplies from the said company, and was charged therefor by the company in his accounts with them; that some of the said supplies were in his possession at the time of the termination of his relations with the company. The defendant claims and the plaintiff denies that the defendant should be credited for such supplies as were in his possession at the time of the termination of such relations, the defendant contending and the plaintiff denying that the relations and agreements of the defendant with such company were such that said credit should be given," and that " the only question to be tried before the jury shall be whether or not the defendant shall have any credit for such goods as were in his possession at the termination of his relations with said company."

This does not amount to an agreement to shift the burden of proof from the plaintiff as to his general right to recover and to impose it upon the defendant to establish as an independent defense his right to the return of the supplies on hand and be credited for them. The dispute concerns the precise terms of the arrangement between the parties, and is, whether the defendant was a purchaser of all supplies sent or whether he was a consignee ultimately liable only for such as he finally sold. The controversy does not relate to what in pleading is a confession and avoidance, but to the character of the original contract as to the dairy supplies. This is confirmed by the fact that the declaration is a count upon an account annexed, and the answer a general denial and payment. The burden of proof as to what

the contract was rested upon the plaintiff throughout. *Wylie* v. *Marinofsky*, 201 Mass. 583. The agreed facts admitted the correctness of the items, but did not reach to any admission as to what the contract was.

The question at issue in one aspect was whether the defendant received the supplies as agent or as purchaser. The fact that they were charged to him on account is not decisive and was for the jury to pass upon. That might have been found to be a matter of bookkeeping for convenience in keeping track of them. There are several circumstances which appear to support the claim of the defendant that he was agent and not purchaser. The supplies were shipped and charged to him in the same way as were the machines, but both sides agree that the machines were sent to him as agent and not as purchaser. They were all invoiced to him at the gross price less " his commission." Commission is not used in a proper sense as to goods sold directly to a consignee. Discount is the natural word to use in such connection, while commission correctly decribes that which an agent receives on sales. It further appeared that in some instances customers in the defendant's territory dealt directly with the corporation, and in these cases it paid to the defendant the same commission he would have received had he secured the customer himself. Letters from officers of the corporation speak of the defendant as its agent. The conversation between the defendant and the president and directors of the corporation at the time of his appointment as manager for Vermont and New Hampshire may have been found to amount only to an agreement on his part to make advances on account of supplies sent him so that the corporation would not be crippled by running two supply stations, which did not modify the general agency relation, and did not constitute an agreement to purchase.

In view of these considerations it could not have been ruled rightly as matter of law that there was no evidence to support the defendant's contention as to what the contract was. The nature of the relation was a question of fact.

*Exceptions sustained.*